CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 11 2013

JULIA C. DUDLEY, CLERK
BY:
       /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| I. KENNETH COOK, et al.,<br>    Plaintiffs, | Case Nos. 7:12-cv-00455 |
| v. | MEMORANDUM OPINION |
| JOHN HANCOCK LIFE INSURANCE<br>COMPANY (U.S.A.), et al.,<br>    Defendants. | By:   James C. Turk<br>        Senior United States District Judge |

Pending before the Court is a motion by John Hancock Life Insurance Company (U.S.A.)[1] ("JHLIC") to stay proceedings in this case pending the completion of arbitration between Plaintiffs and one of JHLIC's co-defendants, Crown Capital Securities, LP. ECF No. 36. The motion has been fully briefed and the parties have indicated that they do not desire a hearing. Accordingly, the motion is now ripe for disposition. For the reasons set forth below, the motion to stay, ECF No. 36, is **GRANTED**, and the entirety of this case is stayed pending the completion of the arbitration. As set forth herein, however, counsel for any party may petition the Court at any time to end the stay if the arbitration takes an unduly long time, or if any party believes that it will suffer irreparable harm or be unduly prejudiced from the continuing stay. Additionally, the two pending motions to dismiss, ECF Nos. 12, 17, are **DENIED WITHOUT PREJUDICE**, but when the stay is lifted the parties may renew their motions, without additional briefing or argument required, and ask the Court to rule on either motion to dismiss.[2]

---

[1] As a preliminary matter, and with the agreement of the affected parties, it is hereby **ORDERED** that the style of the case in this matter, which improperly names as a Defendant "John Hancock Life Insurance Company" be amended to reflect the proper name of that entity, "John Hancock Life Insurance Company (U.S.A.)." See ECF No. 13 at n.1

[2] The Court was in the process of preparing its opinion on the two pending motions to dismiss, ECF Nos. 12, 17. In light of the Court's ruling that a stay is appropriate at this time, the Court concludes that the appropriate course is to deny those motions without prejudice to any party's ability to reassert them, rather than leaving the motions pending on the Court's docket for an extended period of time.

I.   FACTUAL BACKGROUND

   A.   The Parties and Procedural Background

Plaintiffs are Dr. I. Kenneth Cook, a retired physician and resident of Virginia, and the Kenneth Cook Irrevocable Insurance Trust, by its Trustee, Kenneth Todd Cook. This case involves claims arising out of the relationship between Dr. Cook and his investment adviser, Defendant Neil Copeland Winterrowd. According to the Complaint, Winterrowd defrauded Plaintiffs, causing them to incur significant financial liabilities. As alleged in the Complaint, Winterrowd had business relationships with the remaining defendants, as described below.

Specifically, in addition to Defendant Winterrowd, there are four other defendants:

1. JHLIC, a Michigan corporation with its principal place of business in Massachusetts;
2. Crown Capital Securities, LP ("Crown"), a Delaware partnership with its principal place of business in California,
3. JP Turner & Co., LLC, a Georgia limited liability company with its principal place of business in Georgia; and
4. Nationwide, an Ohio corporation with its principal place of business in Ohio.

Winterrowd worked as a Financial Industry Regulatory Authority ("FINRA")[3] registered representative for Crown from May 2004 to August 2009, and for JP Turner from August 2009 to September 2011.

JHLIC's connection to the case is based on the fact that Winterrowd recommended as an investment and sold to Dr. Cook (either directly or through Kevin Yurkus) a $10 million life insurance policy from JHLIC in 2007. Plaintiffs allege that Winterrowd made certain representations in connection with this sale that were both negligent and fraudulent. Winterrowd then took additional steps related to the JHLIC Policy that Plaintiffs contend also give rise to

---

[3] FINRA, created in 2007, "is a registered, self-regulatory organization authorized under the Securities Exchange Act of 1934." Morgan Keegan & Co. v. Silverman, __ F.3d __, 2013 WL 425556, at *1 & n.2 (4th Cir. Feb. 4, 2013).

2

liability on the part of JHLIC. Nationwide is named as a Defendant because Winterrowd also sold Dr. Cook an Annuity from Nationwide in 2006, and later, in 2010 made a withdrawal from that annuity without Dr. Cook's permission and allegedly stole those funds.

All the defendants have been served and all except Winterrowd have filed either an answer or a motion to dismiss. J.P. Turner has answered and filed a cross-claim for indemnity, contribution, and attorneys' fees and costs against Winterrowd, but has not filed a motion to dismiss. Nationwide and JHLIC have filed motions to dismiss. Crown had previously moved to compel arbitration of the claims against it, and that motion was granted with the assent of Plaintiffs. Accordingly, the proceedings against Crown are currently stayed.

### B. Winterrowd's Early Involvement with Dr. Cook and His Sale of the JHLIC Insurance Policy

In order to understand the relationship between the arbitrable claims against Crown and the remaining claims in the case, it is necessary to discuss the facts alleged by Plaintiffs. The Complaint alleges that, in 1994, while he was living and working in West Virginia, Dr. Cook began receiving investment and insurance advice from Defendant Winterrowd. ECF No. 1, Compl. ¶ 12. Mr. Winterrowd was a registered FINRA securities representative providing services, at that time through Smith Barney. When Dr. and Mrs. Cook moved back to Virginia in 1997, Winterrowd continued to provide them services as a financial advisor: providing investment and insurance advice, managing investments, and selling various insurance and securities products to them. During the time he served as Dr. Cook's financial advisor, Winterrowd was a FINRA registered representative for several defendants: Crown from May 2004 to August 2009 and JP Turner from August 2009 to September 2011.

In 2007, Winterrowd sold Dr. Cook a $10 million life insurance policy from John Hancock (the "Policy"). Dr. Cook alleges that such a policy was "excessively large" and "far

3

beyond the amount that Dr. Cook thought he might need." ECF No. 1, Compl. ¶ 15. The annual premium for the first year was $257,957. Id. ¶ 16. Dr. Cook alleges that Winterrowd also told him that he could borrow money for the premiums from a bank, if necessary. Id.

Winterrowd advised Dr. Cook that the Policy could be used as an investment and be sold after two years. In support of this representation, Winterrowd provided documents from Fairway Capital demonstrating how the policy could be sold in two years as a life settlement for a gain of almost one million dollars. See ECF No. 1, Ex. 1. Dr. Cook alleges that Fairway Capital was a California entity used by Winterrowd and Kevin Yurkus, the president of Fairway Capital, to sell investments. Id. ¶ 17. John Hancock paid a commission on the $10 million policy to Fairway, which Dr. Cook alleges was then shared with Winterrowd. Id.

Winterrowd advised and facilitated the establishment of a living trust to be designated as the owner of the Policy. Dr. Cook initially paid the premiums to the attorney who established the trust, Mr. Reyzin. Winterrowd subsequently instructed Dr. Cook to pay the premiums directly to Winterrowd himself, and Dr. Cook did so.

Dr. Cook further alleges that Winterrowd repeatedly represented that he was in the process of arranging for the sale of the Policy, and even had Dr. Cook sign settlement papers in 2011. See ECF No. 1, Compl. ¶ 21. Dr. Cook alleges that these representations were false and merely a part of Winterrowd's fraudulent scheme. Dr. Cook alleges he lost $1,141,966.90, some paid to JHLIC, and some allegedly converted and stolen by Winterrowd.

C. The Unauthorized Withdrawal from the Nationwide Annuity

Dr. Cook also alleges Winterrowd and Defendant J.P. Turner are liable for actions surrounding an annuity contract with Defendant Nationwide. In 2010, Winterrowd allegedly used Dr. Cook's signature from a different withdrawal form to withdraw $150,000 from the

Nationwide annuity—without Dr. Cook's permission—in order to pay the premium on the JHLIC policy. See ECF No. 1, Compl. ¶¶ 24-26. Although Dr. Cook wired the funds back to Winterrowd so that he could return them to the Nationwide annuity, Dr. Cook alleges Winterrowd stole those funds. Id. ¶ 27. Dr. Cook also incurred $14,239.93 in surrender charges for the withdrawal. Id. Winterrowd also allegedly converted $50,000 withdrawn without Dr. Cook's permission from a Prudential variable annuity contract. See ECF No. 1, Compl. ¶ 32.

### D. Claims in the Complaint

Plaintiffs' Complaint asserts five counts. With the exception of Count III, however, the remaining counts do not differentiate between defendants, appearing instead to name all of the Defendants. Count I is a claim for conversion. Count II alleges violations of the Virginia Securities Act, Va. Code §§ 13.1-502 and 13.1-522, Section 10(b) of the Federal Securities Exchange Act of 1934, and claims common law fraud and constructive fraud in connection with those violations. Count III names all the defendants except Winterrowd and alleges that they were negligent for failing to prevent Winterrowd's conversion of funds, for failing to adequately supervise Winterrowd, and for negligently breaching duties owed to Plaintiffs under FINRA. Count IV alleges Defendants breached fiduciary duties owed to the Plaintiffs arising out of Defendants' role as investment, securities, and insurance professionals. Lastly, in Count V, Plaintiffs allege Defendants breached express and implied contracts.

## II. ANALYSIS

As noted, the Court has already ordered arbitration of the claims against Crown and stayed the proceedings as against Crown. ECF No. 35. It is clear that this Court has the authority to stay litigation of non-arbitrable claims pending the outcome of the related arbitration proceedings, even against non-parties to the arbitration. Am. Home Assurance Co. v. Vecco

Concrete Constr. Co., Inc. of Va., 629 F.2d 961, 964 (4th Cir. 1980).[4] Indeed, as the Fourth Circuit has recognized, the decision as to whether to stay "is a matter largely with the district court's discretion to control its docket." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996). The Fourth Circuit has held that, even where it "is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action." Am. Home Assurance Co., 629 F.2d at 964.

JHLIC relies on the foregoing authority in support of its motion for stay, and also cites to a number of district court decisions from the Western District of Virginia and elsewhere where courts have stayed the entire case pending arbitration on less than all of the claims. See, e.g., C.B. Fleet Co. v. Aspen Ins. UK Ltd., 743 F. Supp. 2d 575, 589-91 (W.D. Va. 2010); DataNational v. Yellow Book Sales & Distr., 2005 WL 3499929, *3 (W.D. Va. Dec. 21, 2005); Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd., 640 F. Supp. 175, 178 (S.D.N.Y. 1986); see also ECF No. 37 at 4-5 (collecting additional authority)).

Plaintiffs oppose the motion to stay, responding with three basic points. First, they contend that there is only a "very slim" chance that the arbitration will result "in any factual or legal finding." ECF No. 38 at 2. In support of this argument, they point to the fact that the

---

[4] The agreed-upon arbitration order entered by the Court, ECF No. 35, compelled arbitration pursuant to the Virginia Arbitration Act, § 8.01-581.02(A), rather than the Federal Arbitration Act. In that Order, moreover, the Court stayed the Plaintiffs' claims against Crown pending the outcome of the arbitration pursuant to Va. Code § 8.01-581.02(D). Id. In their briefing on the motion to stay, the parties do not reference the Virginia Act, instead discussing only the Federal Arbitration Act. In addressing the propriety of a stay of the entire case, however, the Court concludes that its authority to stay the rest of the litigation does not depend expressly on either statute, but instead derives from the Court's "discretion to control its docket." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996).

6

FINRA Arbitration Rules do not require factual or legal findings to be made, but instead state only that the arbitrator's award "may contain a rationale underlying the award." Id. Second, they argue that their claims against JHLIC are independent of those against Crown. They explain:

> Although the claims in the present case involve the same set of facts, the liability of either Crown or John Hancock is not in any way contingent on the liability of the other. Plaintiffs are seeking judgments against both for the same damages, but those judgments sought can and should be joint and several. In other words Plaintiffs can, and should, be allowed to pursue joint and several liability against both entities in separate forums, and such proceedings would not in any way create 'confusion" or "inconsistent results."

ECF No. 38 at 3. Third and finally, Plaintiffs contend that JHLIC will not be prejudiced by being required to proceed with the case and that the "only prejudice is against the Plaintiffs who have to pursue the matter in two forums, but Plaintiffs are ready and willing to do so." Id.

The Court has carefully considered Plaintiffs' arguments, but is convinced that a stay of these proceedings is the appropriate course. As to Plaintiffs' first argument, it is in some ways irrelevant whether the FINRA arbitration decision contains a rationale, because it will—at the very least implicitly—determine some of the same factual issues that will be decided in this case. Plaintiffs' second point is likewise unpersuasive, in part because it is belied by their own complaint, in which they lump all the Defendants together for purposes of almost all the counts. It is true that the result of the arbitration between Plaintiffs and Crown will not be determinative of the claims against the other Defendants (both because it is not binding on them and because it will not determine certain issues, such as those raised in the motions to dismiss regarding whether Winterrowd can properly be considered an agent of either JHLIC or Nationwide). Nonetheless, there are overlapping factual and legal issues. Notably, most of Plaintiffs' claims against JHLIC assert liability based on an agency theory, i.e., based on a claim that Winterrowd

was acting as JHLIC's agent. Thus, both the arbitrable and non-arbitrable claims will require a determination of whether Winterrowd either did or did not take the actions alleged by Plaintiffs and either did or did not make the representations alleged by Plaintiff. These factors further support granting the requested stay. See Hikers Indus., 640 F. Supp. at 178 ("A stay as to the claims against a non-arbitrating defendant is properly granted where the arbitration o the plaintiff's claims would at least partially determine the issues which form the basis of the claim against the non-arbitrating defendant.").

As to Plaintiffs' third argument and whether there is prejudice to JHLIC, it may well be true that no prejudice to JHLIC or the other Defendants will occur in the absence of a stay, but prejudice to the moving party is not the only factor that the Court must consider. The Court is also concerned with expending judicial resources unnecessarily and with the possibility of inconsistent results. For example, after Plaintiffs' claims against Crown are resolved through arbitration, both the parties and this Court will be able to take that resolution into account as it affects the remaining claims. Indeed, it may well narrow the issues eventually set for trial. Judicial resources clearly will be conserved by the stay. For all of these reasons, the Court grants JHLIC's motion for stay.

None of the remaining co-defendants—Nationwide, J.P. Turner, or Winterrowd—has separately moved for a stay or joined in JHLIC's motion, but neither have they filed any opposition to it, so the Court does not know for certain whether they are opposed to a stay or not. Nonetheless, the Court has the authority to stay the proceedings here in their entirety, see Am. Recovery Corp., 96 F.3d at 97, and the court concludes that is appropriate here. Plaintiffs' claims against Defendant Winterrowd overlap significantly with their claims against Crown. There is certainly less of an overlap between Plaintiffs' claims against Crown, on the one hand, and their

claims against J.P. Turner and Nationwide, on the other.[5] Nonetheless, as discussed herein, there is some overlap, and judicial economy concerns render it preferable to resolve all remaining claims at once, at the conclusion of arbitration, rather than addressing them in piece-meal fashion.

For the foregoing reasons, and exercising its discretion to do so, the Court hereby **GRANTS** JHLIC's motion to stay and **STAYS** proceedings in this case pending arbitration. If the arbitration takes an unduly long time, or if any party believes that it will suffer irreparable harm or be unduly prejudiced from the continuing stay, counsel may petition the Court at any time to end the stay.

### III. CONCLUSION

For the reasons set forth herein, the two pending motions to dismiss, ECF Nos. 12, 17, are **DENIED WITHOUT PREJUDICE**. JHLIC's Motion to Stay, ECF No. 36, is **GRANTED** and this case is hereby **STAYED** pending the completion of the arbitration proceedings between Plaintiffs and Crown.

ENTER: This _11_ day of March 2013.

_/s/ James C. Turk_
James C. Turk
Senior United States District Judge

---

[5] In particular, it appears to the Court that, as compared to the claims against JHLIC, there will be fewer overlapping facts between the claims against Nationwide and J.P. Turner and the claims resolved in arbitration. This is primarily due to the fact that, at least according to the Complaint, Winterrowd was a FINRA registered agent with Crown only until August 2009, when he became a registered agent with J.P. Turner. Although the Nationwide annuity was sold to Dr. Cook when Winterrowd was still an agent with Crown, the only actions Plaintiffs complain of with regard to the Nationwide annuity concern the withdrawal of funds from that annuity in 2010, when Winterrowd was an agent with J.P. Turner. At the time of the withdrawal, then, Winterrowd apparently had no affiliation with Crown at all, so the events concerning the withdrawal have less overlap with the arbitrable claims than do the claims against JHLIC.